William D. DAYTON, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 2–985A276.

Court of Appeals of Indiana,
Second District.

Dec. 22, 1986.

Michael R. Withers, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Marguerite M. Sweeney, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

William D. Dayton appeals his convictions for battery[1] and neglect of a dependent.[2] We reverse in part and affirm in part.

## FACTS

On Wednesday, January 4, 1984, around 3:30 p.m., the victim's mother, Gina Dayton, returned home to find her husband, William D. Dayton, applying ice to a bruise on her daughter's forehead. The victim, four year old S.W., had been left in Dayton's care. Approximately three hours later Gina called her mother, Mary Thompson, and requested Mrs. Thompson to care for S.W. over the weekend. Mrs. Thompson testified S.W. got on the phone, was crying, and asked to be picked up that evening. Ten minutes before Mrs. Thompson arrived at Daytons' apartment, Gina discovered bruises on the child's buttocks while undressing her. Gina called her mother's attention to the bruises. Mrs. Thompson left with the child and drove to the emergency room of a hospital. The examination of the victim by Dr. Frank Ma, the emergency room physician, revealed bruises on S.W.'s forehead, temple, abdomen and buttocks. However, neither the examination nor X–rays revealed internal injuries or broken bones. Based upon the location and appearance of the bruises Dr. Ma concluded S.W. was a likely victim of child abuse and so notified the police. S.W. did not receive any treatment and/or medication.

The following day Mrs. Thompson and Gina returned S.W. to the hospital due to some swelling and enlargement of the abdominal bruises and a low fever. After an examination, Dr. Ma concluded the bruises were enlarged because they were evolving and reconfirmed the lack of internal injuries. S.W. again left the hospital without treatment and/or medication.

At trial, Dayton admitted he had "whipped" S.W. the afternoon of January 4th but stated he did so to discipline the child because she had urinated on the couch. Both Gina and Dayton testified S.W. had previously wet the couch.

## ISSUES

On appeal Dayton raises the following issues:

1) whether the admission of S.W.'s out of court statements into evidence pursuant to Ind. Code Ann. § 35–37–4–6 (Burns Repl.1985) violated the confrontation clause of the United States and Indiana constitutions;

2) whether the trial court erred in refusing to give a jury instruction tendered by Dayton;

3) whether the trial court erred in denying a motion for judgment on the evidence and in allowing the State to reopen its case in chief;

4) and whether the trial court erred in denying Dayton's motions for mistrial occasioned by the admission of evidence of prior or bad acts.

We affirm.

## DISCUSSION

Before we address the issues raised by Dayton, we first consider the sufficiency of the evidence supporting Dayton's conviction for neglect of a dependent. This court cannot countenance a conviction not supported by the evidence. *Meredith v. State* (1982), Ind.App., 439 N.E.2d 204; *Winston v. State* (1975), 165 Ind.App. 369, 332 N.E.2d 229.

■ The information charges on or about January 4, 1984, Dayton knowingly placed S.W. in a situation which endangered her life and health. The specific conduct underlying this charge is Dayton's failure to seek timely medical attention for

1. Ind. Code § 35–42–2–1(2)(B) (1982).

2. Ind. Code § 35–46–1–4(a)(1) (1982).

S.W. "after having beaten [her] ..." Record at 5. Our supreme court has interpreted Ind Code § 35–46–1–4(a)(1) (1982) as proscribing activity which places a child in a situation which exposes the child to a danger which is actual and appreciable. *State v. Downey* (1985), Ind., 476 N.E.2d 121. At trial, therefore, the State had the burden of proving S.W.'s health was placed in actual, appreciable danger by Dayton's failure to obtain medical treatment for her. Considering the evidence previously recited, it is startingly apparent the evidence fails to reasonably support the inference Dayton's omission endangered S.W.'s health. There is no evidence the bruises placed S.W. in a condition which required medical attention without which her health was endangered. Therefore, Dayton's conviction for neglect of a dependent must be reversed. That leaves his conviction for battery for our consideration.

### I.

■■■ Dayton argues the trial court's admission of S.W.'s out of court statements pursuant to Ind. Code Ann. § 35–37–4–6 (Burns Repl.1985) violated his rights of confrontation guaranteed by the Sixth Amendment to the United States Constitution and by Article I, Section 13 of the Constitution of Indiana. This argument was otherwise determined in *Hopper v. State* (1986), Ind.App., 489 N.E.2d 1209. There is no error.[3]

### II.

Next, Dayton claims the trial court erred in refusing to give the jury the following instruction he tendered:

"The Court now instructs you that a person who is the parent, guardian or custodian of a child may use reasonable

corporal punishment when disciplining said children."

Record at A.

In order to determine whether the trial court erred in refusing to give this instruction we must determine, among other things, whether the tendered instruction correctly states the law. *Smith v. State* (1984), Ind., 468 N.E.2d 512; *Alvers v. State* (1986), Ind.App., 489 N.E.2d 83.

Dayton presents a two-pronged argument why the instruction is a correct statement of the law. First, he argues Ind. Code § 31–6–4–3(e) (1982), authorizes the parent, custodian or guardian of a child to use reasonable corporal punishment in the discipline of the child. We disagree. That subsection, which is part of the juvenile law addressing the concerns of children in need of services (CHINS), reads:

"Nothing in this chapter limits the right of a person to use reasonable corporal punishment when discipling a child if the person is the parent, guardian, or custodian of the child...."

■■■ A right must exist before it can be limited. The subsection's use of the term "limits" unambiguously expresses the legislature's intent to leave unfrettered the right of a parent, guardian, or custodian to use reasonable corporal punishment in disciplining a child to the extent the right otherwise exists. The statute does not create the right. Therefore, I.C. § 31–6–4–3(e) does not support Dayton's instruction.

Dayton's second argument is the instruction is a correct statement of the law under the common law of this state. Dayton's tendered instruction referred to three groups: parents, guardians and custodians. The only group into which he falls is that of a custodian. He is not S.W.'s parent or her guardian. Accordingly, we limit our consideration to the custodial classification.

---

3. Dayton asserts without the admission of the hearsay evidence, the State could not have made a prima facie case and he would not have been required to defend himself. We disagree. The record reveals the State established its case without the hearsay evidence. Dayton's wife, Gina, testified S.W. had no bruises on the morning of the alleged battery. She also testified Dayton had the sole care and custody of S.W. prior to her discovery of the bruises. Finally, Gina testified Dayton admitted he had spanked S.W. that afternoon. This evidence establishes the State's prima facie case.

■ The CHINS statute defines custodian as "a person with whom a child resides." Ind. Code Ann. § 31–6–1–2 (Burns Repl.1980). *Webster's Third New International Dictionary* (1976), p. 559 broadens the definition to anyone "that guards and protects or maintains...." Thus, the spectrum within the custodian classification ranges from a parent at one end to a stranger who agrees to watch a baby or child while the parent is momentarily occupied at the other end. Unquestionably, the common law provides some custodians with the right to use reasonable corporal punishment in disciplining a child. However, just as certainly, the common law does not recognize the right in *all* custodians. Indeed, Dayton has failed to present us with any authority for the existence of the right in custodians other than parents, schoolteachers and persons in loco parentis.[4] Further, he fails to make any argument for such an extension. Therefore, because the instruction includes *all* custodians, and is not limited it to custodians who are parents, school authorities or persons in loco parentis, the instruction is an incorrect statement of the law and properly refused by the trial court.

### III.

Dayton next argues the trial court erred in denying his motion for judgment on the evidence made at the close of the State's evidence in chief. The motion, based upon the State's failure to offer evidence Dayton was over eighteen (18) years of age (an element of the battery charge), was denied after which the State, with leave of court, re-opened its case and offered the omitted evidence.

■ There is no error. First, Dayton waived any error in the trial court's ruling by presenting evidence in his case in chief. *Sanders v. State* (1981), Ind., 428 N.E.2d 23. Second, the trial court did not abuse its discretion in granting the State leave to re-open its case within a short time after it rested and before Dayton commenced his evidence. "A party should be afforded the opportunity to reopen its case to submit evidence which could have been part of its case in chief." *Gorman v. State* (1984), Ind., 463 N.E.2d 254, 257.

### IV.

Finally, Dayton asserts the trial court erred in denying his motions for mistrial occasioned by the admission, over objection, of evidence of prior bad acts. Assuming the merit of Dayton's argument, the error does not constitute reversible error.

■ The elements of the charged battery is the knowing or intentional touching in a rude, insolent or angry manner of a person less than thirteen (13) years of age by a person at least eighteen (18) years of age. I.C. § 35–42–2–1(2)(B). The proof beyond a reasonable doubt of each of these elements is overwhelming. Dayton and S.W.'s ages are undisputed. Dayton, both at trial and in out-of-court statements received in evidence, admitted the remaining elements of the offense when he admitted he grabbed S.W. by the arm and "whipped" her, perhaps "a little hard." (Record at 729). This overwhelming evidence of guilt, in the form of undisputed evidence and admissions by Dayton, renders harmless any error in the admission of evidence of prior bad acts.

Judgment reversed on the neglect of a dependent charge and affirmed on the battery charge.

SULLIVAN, J., concurs.

BUCHANAN, C.J., concurs in result.

---

**4.** As authority, Dayton cites *Danenhoffer v. State* (1879), 69 Ind. 295, *Vanvactor v. State* (1888), 113 Ind. 276, 15 N.E. 341 and *Indiana State Personnel Board v. Jackson* (1963), 244 Ind. 321, 192 N.E.2d 740. These cases recognize the rights of parents, teachers and other persons in loco parentis to use reasonable corporal punishment in disciplining children.